**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARTIS C. CARROLL, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 19-2060 |
| | : | |
| PETER ANDERS | : | |

# MEMORANDUM

KEARNEY, J.                                                                                                      March 25, 2020

In early 2015, African American Artis C. Carroll, Jr. disputed grading at Millersville University of Pennsylvania. The University also found he harassed persons resulting in disciplinary sanction. His repeated conduct eventually resulted in trespass charges, a guilty verdict for defiant trespass, and a prison term. When preparing to leave prison in 2017, Mr. Carroll wrote to his lawyer requesting assistance with returning to school which the lawyer, the university, and the university's police chief viewed as threatening bodily harm to many persons. We do not opine as to whether they were justified in this view. But the police chief delivered and read a warning letter to Mr. Carroll upon his prison release precluding him for contacting university personnel or appearing on the university campus until July 2019 but allowing him to discuss the no-trespass with university officials. Rather than discuss with the university, Mr. Carroll sued the police chief among others. After we dismissed several of his claims, we allowed discovery into Mr. Carroll's remaining due process and race discrimination claims. Mr. Carroll failed to appear for deposition or in court; he failed to answer motions. After careful review of the police chief's unopposed motion for summary judgment with supporting evidence, we enter summary judgment for the police chief. Mr. Carroll fails to adduce evidence of being a student entitled to certain levels of due process and even if a student, fails to show a lack of due process. There is no basis for race discrimination. We enter judgment dismissing Mr. Carroll's claims.

## I.    Statement of undisputed facts

Artis C. Carroll is an African American man.  He enrolled in Millersville University of Pennsylvania beginning in 2011.  By 2014, he enrolled in the University's clinical program for respiratory therapy.  He struggled with his grades by the Spring Semester 2015.[1]

### Mr. Carroll's Spring 2015 problems with the University.

On February 26, 2015, the University sanctioned Mr. Carroll, Jr. with counseling and two months probation after finding him responsible for violating the University's Student Code of Conduct, including alleged "disorderly, harassing, and inappropriate" conduct on February 14, 2015.[2]

On March 25, 2015, Mr. Carroll visited the University Registrar's office demanding a form to change a grade with which he disagreed.[3]  Registrar Alison Hutchinson told Mr. Carroll she lacked permission to provide paperwork because Mr. Carroll sued the University.  She asked Mr. Carroll several times to leave.[4]  Mr. Carroll refused to leave and raised his voice at Ms. Hutchinson.[5]  University Police Officers Flood and Yanak then received a call "of a student giving staff a hard time, and refusing to leave, the registers [sic] office," and reported to the scene.[6]  The Officers informed Mr. Carroll he must leave and contact Tom Richardson, University Assistant Vice President of Student Affairs, before returning to the Registrar's office.[7]  The Officers cited Mr. Carroll for simple trespass[8] and advised he would be arrested for trespassing if he returned to the Registrar's office without Assistant Vice President Richardson's approval.[9]  The next day, Lori Austin, the University Director of Judicial Affairs, wrote Mr. Carroll informing of alleged Student Code of Conduct violations from the day before.[10]  Director Austin's letter informed Mr. Carroll of an Administrative Hearing scheduled for April 3, 2015 where Mr. Carroll could explain his conduct.[11]

On March 26, 2015, Mr. Carroll met with Director Austin in her office.[12]  Director Austin attempted to help Mr. Carroll by calling the Registrar's office on Mr. Carroll's behalf to discuss his issues with obtaining a grade change form.[13]  Nobody from the Registrar's office could help at the moment, so Director Austin told Mr. Carroll to return to her office the next day.[14]  Director Austin told Mr. Carroll several times to not visit the Registrar's office and warned Mr. Carroll he "would be arrested if [he] went up there."[15]  Mr. Carroll left after agreeing to return to Director Austin the next day.[16]  Minutes later, Officer Flood called Director Austin stating he arrested and cited Mr. Carroll for Criminal Trespass as he exited Lyle Hall and the Registrar's office.[17]

On March 27, 2015, Assistant Vice President Richardson wrote Mr. Carroll regarding his actions on March 25, 2015 and March 26, 2015.[18]  Assistant Vice President Richardson told Mr. Carroll because of "the serious nature your behavior in these incidents, you have been placed on interim suspension from the University.  You are banned from this campus until you have received permission otherwise."[19]  Director Austin also wrote Mr. Carroll on March 27, 2015 informing of alleged University Student Code of Conduct violations for visiting the Registrar's office without permission on March 26, 2015 and scheduling an Administrative Hearing for April 3, 2015.[20]

Despite his interim suspension and numerous warnings to not violate the no trespass order, Mr. Carroll attended class on University campus on March 31, 2015.[21]  Director Austin, Assistant Director of Judicial Affairs Ron Wiafe and University Police asked Mr. Carroll to leave campus, but he refused.[22]  Police arrested Mr. Carroll for Defiant/Criminal Trespass and detained him from March 31, 2015 until April 8, 2015.[23]  Director Austin wrote Mr. Carroll two letters on April 9, 2015.[24]  The first letter informed Mr. Carroll of an Administrative Hearing

scheduled for April 15, 2015 for his Student Code of Conduct violations on March 31, 2015.[25] The second letter informed Mr. Carroll Director Austin rescheduled the April 3, 2015 Administrative Hearing for April 15, 2015 and all of his pending cases would be heard during the April 15, 2015 Administrative Hearing.[26] These letters also informed Mr. Carroll the University would assess monetary sanctions if he failed to attend the hearing.[27]

Mr. Carroll did not attend the April 15, 2015 Administrative Hearing.[28] At the hearing, Director Austin "reviewed the evidence without the benefit of Mr. Carroll's testimony, [and] found [Mr. Carroll] violated the Student Code of Conduct related to the charges" for all of his recent cases combined.[29]

Director Austin placed five sanctions on Mr. Carroll: (1) suspension from the University effective April 17, 2015 through December 31, 2015 meaning Mr. Carroll would not able to re-enroll in classes until the Spring 2016 semester, (2) required mental health assessment and evaluation, (3) $100 fine for failing to appear at the April 15, 2015 Administrative Hearing, (4) deferred expulsion resulting in immediate imposition should Mr. Carroll engage in any new misconduct, and (5) restrictions from the entire University campus beginning March 27, 2015 until informed otherwise.[30] In an April 17, 2015 letter, Director Austin informed Mr. Carroll of these sanctions and his right to appeal within five business days.[31]

Mr. Carroll received an electronic copy of the April 17, 2015 letter the same day, beginning the five business-day appeal period.[32] Fourteen days later, Mr. Carroll appealed to Director Austin, Assistant Director Wiafe and Assistant Vice President Richardson.[33]

### Judicial Affairs Handbook sets due process for an appeal.

The University's Office of Judicial Affairs issued a handbook identifying the judicial process for alleged violations of the Student Code of Conduct.[34] Upon receipt of allegations, a

hearing officer schedules an administrative hearing with the accused student and notifies the accused student of the scheduled date, time and location of the hearing.[35] "Failure to appear at a hearing for the scheduled date and time may result in a decision being made in the absence of the student, which might result in additional charges and sanctions."[36] During the administrative hearing, the accused student "[s]hall be allowed to introduce witness testimony, relevant evidence and [his] version of the events that resulted in the accusation of the Code of Conduct, . . . [the accused student] may hear and question witnesses as well as examine the relevant evidence and documents presented," and he may be accompanied by an advisor or Judicial Advocate who the student may consult with during the hearing.[37]

The accused student has the right to appeal the adjudication rendered at the administrative hearing.[38] An student "found responsible for violation the Code of Conduct, may request an appeal . . . by submitting an appeal request form to the Office of Judicial Affairs within five . . . business days following the Hearing Officer's decision."[39] "All sanctions rendered at the [a]dministrative hearing must be adhered to while awaiting a result of the request for appeal."[40] Appeals will only be considered if the accused student proves a "legitimate reason exists for an appeal."[41]

The Handbook also outlines University procedure for imposing an interim suspension.[42] A student may be subject to immediate suspension or loss of privileges pending final action of charges he violated the Student Code of Conduct, if it is determined "the student's presence on campus may constitute a threat to the health, safety and welfare of the University community. In addition, a student may be placed on interim suspension if the student poses an ongoing disruption of, or interference with, the normal operations of the University."[43]

### *State court conditions of release for misdemeanor conviction.*

Following a December 1, 2015 trial on his misdemeanor Defiant Trespass at the University, the state court sentenced Mr. Carroll to time served to twelve months incarceration, but immediately paroled Mr. Carroll, crediting him for time served awaiting trial.[44] The state court conditioned release upon, among other factors, Mr. Carroll: complying with mental health treatment; performing fifty hours of community service; staying off of University property; not contacting a University employee; and, contacting the University through its attorney.[45]

Mr. Carroll violated these conditions on December 18, 2015 and again on January 13, 2015 by contacting University staff.[46] Police arrested Mr. Carroll under authority of bench warrants for these violations. The state court released Mr. Carroll with a final warning not to violate again or he would impose the unexpired balance of sentence.[47] But Mr. Carroll eventually violated these conditions, leading to incarceration with expected release in Summer 2017.[48]

### *Contact with Chief Anders leading to the July 5, 2017 letter.*

University police chief Peter Anders is apparently not involved with Mr. Carroll until July 2017.

While incarcerated, Mr. Carroll submitted a General Purpose Request Form to his attorney, requesting assistance lifting the University's no trespass order and stating his intention to complete his education and graduate upon his release.[49] Mr. Carroll told his attorney: "The second week of August 2017, I'm going to go to [the University] with a Body cam and demand records demand enrollment, and everything else I'm demanding a jury trial if charged with anything and will be acquitted."[50] Mr. Carroll closed by saying "F*** Colibine [sic], F***

Virginia Tech, F*** Sandy Hook, that has nothing to do with this case."[51]  The prison released Mr. Carroll on June 29, 2017.[52]  On June 30, 2017, Mr. Carroll's attorney provided this letter to Chief Anders which "caused [him] a concern [Mr. Carroll] may cause others substantial bodily harm."[53]

In response, Chief Anders prepared and personally served Mr. Carroll a letter on July 5, 2017, detailing his history of trespass and misconduct at the University.[54]  Chief Anders renewed the "no trespass and communication order to protect [University] students and staff from unwanted contact" through July 5, 2019.[55]  Chief Anders directed Mr. Carroll to specifically contact Assistant Vice President Richardson to discuss academic or business concerns.[56]  In addition to handing the letter to Mr. Carroll, Chief Anders also read him aloud the entire letter.[57]

Since July 5, 2017, Mr. Carroll has not asked Chief Anders or Assistant Vice President Richardson to reconsider the warnings.[58]  Between March 2012 and July 7, 2017, Chief Anders issued fourteen similar trespass warning letters to non-students like Mr. Carroll.[59]  Chief Anders issued ten such letters to adult white males, and three to adult African-American males.[60]

## II.     Analysis[61]

Mr. Carroll claims Chief Anders violated his civil rights by suspending him from the University for two years under the July 5, 2017 letter without providing due process and for racially motivated reasons.[62]

After we partially dismissed Mr. Carroll's claims against Chief Anders and allowed the parties to proceed into discovery on his procedural due process and race discrimination claims, Chief Anders moves for summary judgment arguing Mr. Carroll does not enjoy the same level of due process as a student to challenge the July 5, 2017 renewal of his April 17, 2015 sanctions, and argues the University and he provided due process even though the record shows Mr.

Carroll's lack of entitlement to due process at the time. Chief Anders argues Mr. Carroll does not show he discriminated against him based on race in issuing the July 5, 2017 letter. Chief Anders also argues qualified immunity applies to Mr. Carroll's due process challenge.

Mr. Carroll did not participate in discovery or respond to this motion.[63] He did not appear for noticed depositions; he did not appear for court-ordered depositions; and, he did not appear at our court hearings on his non-compliance.[64] "When a non-moving party fails to respond to a summary judgment motion, a court may only grant the unopposed motion upon a finding that judgment for the moving party is 'appropriate.'"[65] Summary judgment is "appropriate" when the movant demonstrates it is warranted as a matter of law.[66] "Where the moving party has the burden of proof on the relevant issues, . . . the district court must determine . . . the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law."[67] Where the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law."[68]

Mr. Carroll fails to adduce evidence supporting either his due process or racial discrimination claim.

### A. Mr. Carroll's due process claim fails.

"The Due Process Clause . . . forbids arbitrary deprivations of liberty."[69] The first issue today is whether Mr. Carroll is afforded due process as a student. In *Goss v. Lopez*, the Supreme Court recognized a student's property interest in the student's right to a public education.[70] The Supreme Court instructs school authorities are not free from notice and hearing requirements of due process when they take action depriving a student of this property interest.[71] But no court has yet held such a property interest in continuing a university experience for non-students.[72]

Even if Mr. Carroll possessed a property interest in continuing his education, the University did not violate Mr. Carroll's due process rights when it extended his suspension in July 2017.

### 1. Mr. Carroll does not demonstrate student property interest.

The Constitution provides no person shall be "deprived of life, liberty, or property without due process of law."[73] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."[74] As Mr. Carroll claims Chief Anders restricted his due process rights, Mr. Carroll must first show he possessed a property interest of which Chief Anders deprived him.[75]

In *Goss v. Lopez*, the Supreme Court recognized a high school student's property interest in continuing education. "[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."[76] Pennsylvania district courts recognize "a graduate student has a property interest protected by procedural due process in the continuation of his or her course of study under Pennsylvania law."[77] Pennsylvania law defines who is a student within its system of higher education as "a person who is enrolled in a course of study in any institution which is subject to the provisions hereof."[78]

In *Haney v. West Chester University*, university employees charged Mr. Haney with violations of the student code of conduct for allegedly lying on his admissions application.[79] Mr. Haney argued the student code of conduct did not apply to him because of his status merely as an applicant and not an enrolled student.[80] Judge Slomsky found the student code of conduct applied to applicants through a catch-all provision in the code.[81] Judge Slomsky reasoned, "[i]f

not a student, the accused would be entitled to no due process. Indeed, no court has held that a non-student has a constitutionally protected interest in a college education."

In *Borrell v. Bloomsburg University*, Ms. Borrell, a student enrolled in a university's Nurse Anesthesia program, sued the university for due process violations after university employees and administrators expelled her for refusing to submit to a drug test.[82] Judge Caputo denied the university's motion to dismiss the due process claim, finding an enrolled student had a property interest in "continuation of her course of study."[83]

Each of these cases share a common vein: the plaintiff's status as an enrolled student, giving rise to property interests in continuing education. Before Mr. Carroll can claim the University provided him insufficient process before imposing the July 2017 no-trespass order, he must prove he is an enrolled student possessing a property interest in his continued education.

Mr. Carroll does not make this showing. Mr. Carroll last enrolled at the University for the Spring 2015 semester.[84] Chief Anders extended the no-trespass order, blocking Mr. Carroll's entry to campus, in July 2017,[85] well after the expiration of Mr. Carroll's enrollment and accompanying property interest in continuing his education. We cannot extend these principles when we have no evidence of Mr. Carroll's student status.

### 2. Even if a student, the University provided due process to Mr. Carroll.

Even assuming we could find evidence of Mr. Carroll being a student in July 2017, the University through Chief Anders afforded him the due process owed to a university student before barring them from campus. To determine a student's due process rights for disciplinary procedures, our Court of Appeals adopted the three-part balancing test set forth in *Mathews v. Eldridge*.[86] The Supreme Court requires we first consider "the private interest that will be affected by the official action."[87] We next consider "the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."[88]  "The 'value' of additional procedural safeguards is judged by the extent to which they reduce the risk of "erroneous deprivation" through the procedures used."[89] We last consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[90]

We find guidance in Judge Slomsky's reliance on the *Mathews* test in *Haney v. West Chester University*.[91]  Mr. Haney sued West Chester University and two University employees for due process violations stemming from lies Mr. Haney allegedly included in his application for admission.[92]  Judge Slomsky found Mr. Haney possessed, as a college student, "a valid property interest in his continued education" at West Chester University.[93]  Judge Slomsky then found Mr. Haney received more process than the Supreme Court required under *Goss*.[94]  After examining several alternatives Mr. Haney proposed to provide additional or alternative due process than already provided by West Chester University, Judge Slomsky determined "[i]mportantly, [Mr. Haney] was given notice of the hearing and its procedures well in advance of the initially scheduled date, which provided him adequate time to prepare," and Mr. Haney would be allowed to "present his side of the story."[95]  Judge Slomsky then cited our Court of Appeals for "the need for maintaining order and discipline in our schools without prohibitive costs and in a manner that will contribute to, rather than disrupt, the educational process."[96] Judge Slomsky noted the Supreme Court, in *Goss*, "concluded that an informal hearing process would reconcile the private and governmental interests and that requiring representation by counsel, cross-examination, and other, more formal procedural safeguards would not sufficiently increase the reliability and fairness of the process to warrant the additional expense and disruption of the educational process."[97]

The *Mathews* factors weigh in favor of Millersville University. Mr. Carroll adduces no evidence of being a student, and as stated in *Haney*, a University does not owe due process to a non-student.[98]

In *Palmer v. Merluzzi*, our Court of Appeals cited *Goss* finding a student's property interest in participating in the school's football program.[99] Mr. Palmer admitted to consuming marijuana and beer on school property, conduct directly in violation of the school handbook. The school district imposed a ten-day suspension from school and a sixty-day suspension from athletics.[100] Our Court of Appeals affirmed summary judgment for the defendants, concluding they provided due process.[101]

Even if we were to find Mr. Carroll, as a person continuing or completing his education has a similar property interest, we must find the University provided him due process. For example, in *Leacock v. Temple University School of Medicine*, Judge Giles noted Ms. Leacock "may have a viable protected property interest in the pursuit and continuation of her graduate medical school education."[102] After finding a property interest, Judge Giles granted summary judgment to the university, finding its dismissal of Ms. Leacock complied with due process requirements of notice and a hearing.[103] In *Brian A. ex rel. Arthur A. v. Stroudsburg Area School District*, the school district expelled the student after discovering he made a terroristic threat to bomb his high school.[104] Citing *Goss*, Judge Vanaskie noted the student possessed a property interest to continue his public education before finding the school district provided the student an administrative hearing and adequate notice to comply with due process requirements.[105] Judge Vanaskie granted summary judgment to the School District.[106]

Even assuming the University did owe Mr. Carroll due process as a person interested in continuing his education following probation and a jail sentence, Mr. Carroll received due

process. Each time the University charged Mr. Carroll with a violation of the Student Code, a University employee contacted Mr. Carroll noticing the scheduled time and place for an Administrative Hearing.[107] At the Administrative Hearing, the University offered Mr. Carroll an opportunity to examine evidence presented against him, introduce his own witness testimony, relevant evidence and his own version of the events, and allow Mr. Carroll to bring an advisor or "Judicial Advocate" to consult or advise during the hearing.[108] Following adjudication at the hearing, University process allowed Mr. Carroll five days to appeal.[109] The University's process provided Mr. Carroll notice of the hearings where his charges would be adjudicated and adequate time to prepare. The University's process roughly mirrors the process in *Haney*, and we similarly find it adequate.

### 3. Even assuming Mr. Carroll could adduce facts to proceed on a due process claim, Chief Anders is entitled to qualified immunity on this uncertain area of the law relating to former students.

Chief Anders argues, as a police officer, qualified immunity protects him from Mr. Carroll's due process claim.[110]

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[111] If a government official—in this case, Chief Anders—reasonably thinks his conduct complies with the law, he is shielded from liability.[112] Chief Anders is entitled to qualified immunity as long as he "does not violate a 'clearly established' constitutional or federal right."[113] "A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[114] "The crux of the 'clearly established' analysis "is whether officers have 'fair notice' . . . they are acting unconstitutionally.""[115] "The application of the right to the issue at hand must be 'beyond debate.'"[116]

In determining whether qualified immunity protects Chief Anders here, we find guidance from our Court of Appeals finding qualified immunity protected a school administrator defendant from a student plaintiff's claims of due process restrictions, reversing judgment in the district court.[117] Ms. Borrell attended a nursing program through Bloomsburg University, which took place at Geisinger Hospital.[118] Both the University and Hospital maintained an anti-drug policy to which students must abide.[119] "The policy states . . . drug tests 'may be administered upon reasonable suspicion of substance abuse, (this may include [individual] situations . . . where [Human Resources] is made aware of alleged drug/alcohol use and deems it as reasonable cause to test the employee.'"[120] But any Hospital worker "who refuses to cooperate in any aspect [of the testing process] . . . shall be subject to disciplinary action, including termination, for a first refusal or any subsequent refusal."[121] The director of the nursing program "terminated [Ms.] Borrell for violating [the Hospital's] drug and alcohol policy by refusing to take a drug test when asked."[122] Before the director issued the termination letter to Mr. Borrell, the director obtained a signature on the letter from a Bloomsburg University School Administrator confirming the administrator reviewed the relevant information and agreed with the director's decision to terminate.[123] Ms. Borrell requested a formal hearing from the University to contest her termination, but the school administrator denied the request, instead responding, "since [the University] had to honor [the Hospital's] drug policy, disqualification from [the Hospital's] clinic made her ineligible to complete her coursework at [the University] necessary to complete the [nursing p]rogram."[124] Ms. Borrell sued the hospital, the director, the university and the school administrator for violating her due process right to a pre-deprivation hearing.[125] Judge Caputo granted summary judgment in favor of Ms. Borrell and concluded qualified immunity did not protect the school administrator,[126] and the defendants appealed.[127]

Our Court of Appeals concluded the school administrator entitled to qualified immunity, finding the "record indicates . . . it is hardly 'beyond debate' [the School Administrator] violated [Ms.] Borrell's due process rights."[128] Our Court of Appeals recognized "many cases [conclude] graduate students at public universities have property interests in continuing their education,"[129] but reasoned "those cases do not speak to the right of a clinical student at a private hospital to a hearing or comparable process before termination—even if the natural consequence of that termination is an inability to complete an educational program."[130]

Like the uncertainty overshadowing whether Ms. Borrell possessed a right of a clinical student at a private hospital to a pre-deprivation hearing, we find Mr. Carroll's right to due process from the University here, as a present non-student on an extended probation, similarly unclear. While courts discussed due process rights of other classes of students, such as high school students,[131] college applicants,[132] or student athletes,[133] "[n]o court has held that a non-student has a constitutionally protected interest in a college education."[134]

Chief Anders acted in accord with the process in the Judicial Affairs Handbook, suggesting his belief he acted appropriately. As a present non-student seeking to complete his degree after a couple of years of probation and no-trespass directions, Mr. Carroll does not have a "clearly established" due process right required to defeat Chief Anders' claim of qualified immunity.

### B. Mr. Carroll fails to adduce evidence of race discrimination.

The hallmark of a race discrimination claim is intent.[135] "Intentional discrimination may be proven by either (1) direct evidence of willful discrimination, or (2) a showing of deliberate indifference by defendants to events adverse to the plaintiff."[136] To demonstrate direct evidence of willful discrimination, Mr. Carroll must show he suffered "disparate impact . . . coupled with

some other indicia of purposeful discrimination."[137] Mr. Carroll can accomplish this by showing the University treated a group of comparators, or people "similarly situated" in "all relevant aspects,"[138] disparately to his own. We accept Mr. Carroll's claim as alleged willful discrimination but find he fails to show Chief Anders acted with requisite intent requiring fact findings at trial.

In *Williams v. Pennridge School District*, our Court of Appeals affirmed summary judgment for the school district on Ms. Williams' race discrimination claim.[139] Ms. Williams, an African-American high school student academic award recipient, alleged willful racial discrimination: (1) omission of her identification at a school award ceremony,[140] (2) an incident where a white student took her seat and the teacher refused to help Ms. Williams get it back, sending her to work alone in the library instead,[141] and (3) in response to complaints of harassment by classmates, the school principal's suggestion Ms. Williams "should be hospitalized over the summer, attend an alternative school in the fall, and, when she was ready to cope, return to Pennridge."[142] Our Court of Appeals affirmed summary judgment for the school district concluding Ms. Williams failed show a prima facie intent to discriminate.[143] "With regard to willful discrimination, the only evidence of intent [Ms. Williams] proffered to support her claim was to draw an inference that defendants acted against her because she was an African-American female. But as we have repeatedly held, evidence of disparate treatment, alone, is insufficient to establish discriminatory intent."[144] "Indeed, even if we ignore defendants' stated non-discriminatory reasons to justify their conduct, there was still no evidence that they had an intent to discriminate. On a summary judgment motion made against a plaintiff's claims the plaintiff has the burden to make a prima facie showing of her claims."[145]

As in *Williams*, Mr. Carroll's claim requires us to merely draw an inference Chief Anders intended to discriminate against Mr. Carroll on basis of Mr. Carroll's race, which is insufficient to make a prima facie showing. Ms. Williams showed evidence of disparate treatment through instances where school employees and administrators treated her differently from white students. Our Court of Appeals found the evidence alone insufficient to survive summary judgment. Mr. Carroll shows less than this. Mr. Carroll alleges racial discrimination because he is an African-American student and Chief Anders is white. Mr. Carroll alleges Chief Anders "oppressing [Mr. Carroll] for . . . racial reasons,"[146] and "everything [the defendants] do is for racial reasons."[147] Mr. Carroll does not adduce evidence of Chief Anders' discriminatory intent, and his suggested inference alone cannot survive summary judgment. [148]

Mr. Carroll decided to not participate in discovery. He provided nothing supporting his race discrimination claim beyond the suggested inferences from his pleading. Chief Anders adduced facts suggesting a lack of disparate impact in his declaration. Chief Anders swore: "Between March 2012 and July 7, 2017, I wrote/issued [fourteen] non-student trespass warning letters including Mr. Carroll's letter. Ten of the fourteen letters were issued to adult white males. Three of the fourteen letters, including the 2017 letter to Mr. Carroll, were issued to adult African-American males."[149] Mr. Carroll does not dispute these facts.

### C.    Mr. Carroll is not entitled to injunctive relief.

It appears Mr. Carroll seeks injunctive relief to either lift Chief Anders' no-trespass order of July 5, 2017 or register Mr. Carroll for classes to complete his degree.

We weigh two critical factors and two remaining factors to determine whether to grant injunctive relief.[150] If the plaintiff fails on the critical factors, we need not address the remaining factors.[151] The critical factors are "whether the movant has shown a reasonable probability of

success on the merits;" and "whether the movant will be irreparably injured by denial of the relief."[152]  The remaining factors are "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest."[153]

We are guided by *Acosta, Inc. v. Navitsky*, where Judge Smith denied the plaintiff's motion for injunctive relief.[154]  Acosta, Inc. sued Navitsky for breach of contract, tortious interference with contract and theft of trade secrets.[155]  Judge Smith found the plaintiff failed to show a likelihood of success on the merits on any claim it raised.[156]  Judge Smith concluded the plaintiff's probability of success on the merits ranged from no likelihood to succeed on the merits to only a minimal chance of success on the merits.[157]  By the time Acosta moved for an injunction, Navitsky already ceased doing business with Acosta's clients, which formed the basis of Acosta's claims.[158]  Judge Smith concluded an injunction would prevent only an "incredibly small" harm, but "likely none at all."[159]

Like in *Navitsky*, Mr. Carroll also fails these critical factors.  Mr. Carroll does not provide evidence to succeed on his due process claim.  Mr. Carroll provides no evidence of being a student enrolled at the University at the time his alleged constitutional violations occurred.  The University also provided Mr. Carroll process required by the Supreme Court.  Mr. Carroll also fails to show irreparable injury absent an injunction.  Like in *Navitsky*, where Judge Smith found the chance of irreparable injury "incredibly small" because the complained conduct already ceased, Mr. Carroll cannot irreparable injury because the no-trespass order expired in July 2019.  Absent an injunction, Mr. Carroll could still apply to complete his degree at the University or apply to another University within the Pennsylvania System of Higher Education to complete his degree.

We deny injunctive relief to Mr. Carroll as he fails to satisfy his burden on these critical factors.

## III.  Conclusion

After proceeding past a substantial motion to dismiss, Mr. Carroll decided not to participate in the case.  He did not appear for depositions or court appearances.  He elected to not respond to Chief Anders' summary judgment motion.  We nevertheless address Mr. Carroll's claims in the light most favorable to him based on the adduced evidence.   After this analysis, we grant summary judgment to Chief Anders on Mr. Carroll's remaining due process and race discrimination claims.

---

[1] In 2016, Mr. Carroll sued Millersville University and several of its agents after several internal complaints against professors and administration.  This 2016 case is ongoing against two university employees at No. 16-1406 concerning due process allegations relating to decisions in Spring 2015.   We describe much of the background addressed today in our February 14, 2020 Memorandum (ECF Doc. No. 109) dismissing all but procedural due process claims against two university employees in No. 16-1406. Mr. Carroll, as he decided in this case, is not progressing in No. 16-1406.  We are presently awaiting service on still-unserved parties.   Should he fail to serve these persons, we will proceed on resolving his remaining due process claims against the two university employees relating to Spring 2015 conduct.

[2] ECF Doc. No. 34-6 at 7. We use the pagination assigned by the CM/ECF docketing system.

[3] *Id*. at 4.

[4] *Id*.

[5] *Id*.

[6] *Id*.

[7] *Id*. at 5.

[8] ECF Doc. No. 34-2 at 1, ¶ 2; ECF Doc. No. 34-7 at 21.

[9] ECF Doc. No. 34-6 at 5.

[10] *Id*. at 12.

[11] *Id.*

[12] *Id.* at 16.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*; ECF Doc. No. 34-2 at 1, ¶ 2.

[18] ECF Doc. No. 34-6 at 14.

[19] *Id.*; ECF Doc. No. 34-5 at 1, ¶¶ 3-4.

[20] ECF Doc. No. 34-3 at 1, ¶¶ 7-8; ECF Doc. No. 34-6 at 16.

[21] ECF Doc. No. 34-6 at 21.

[22] ECF Doc. No. 34-7 at 1.

[23] ECF Doc. No. 34-3 at 3, ¶ 12.

[24] *See* ECF Doc. No. 34-6 at 21; ECF Doc. No. 34-7 at 1.

[25] ECF Doc. No. 34-6 at 21.

[26] ECF Doc. No. 34-7 at 1-2.

[27] *Id.* at 2; ECF Doc. No. 34-3 at 3, ¶ 12; ECF Doc. No. 34-6 at 22.

[28] ECF Doc. No. 34-3 at 3, ¶15; ECF Doc. No. 34-7 at 5.

[29] ECF Doc. No. 34-3 at 3, ¶ 15.

[30] ECF Doc. No. 34-7 at 6.

[31] *Id.* at 5-7.

[32] ECF Doc. No. 34-3 at 3, ¶ 16.

[33] ECF Doc. No. 34-7 at 8.

[34] *Id*. at 10-13.

[35] *Id*. at 11.

[36] *Id*.

[37] *Id*.

[38] *Id*. at 12.

[39] *Id*. at 12, ¶ 1.

[40] *Id*. at 12, ¶ 2.

[41] *Id*. at 12, ¶ 3.

[42] *Id*. at 13.

[43] *Id*.

[44] *Id*. at 14-15; ECF Doc. No. 34-2 at 1, ¶ 5.

[45] ECF Doc. No. 34-7 at 15.

[46] *Id*. at 19.

[47] *Id*.

[48] ECF Doc. No. 34-2 at 1, ¶ 5.

[49] ECF Doc. No. 34-7 at 17.

[50] *Id*.

[51] *Id*.

[52] ECF Doc. No. 34-2 at 2, ¶ 8.

[53] ECF Doc. No. 34-7 at 19.

[54] *Id*. at 18-20.

[55] *Id*. at 19-20.

[56] *Id*. at 20.

⁵⁷ ECF Doc. No. 34-2 at 2, ¶ 12.

⁵⁸ *Id.* at 3, ¶ 13.

⁵⁹ *Id.* at 3, ¶ 18.

⁶⁰ *Id.*

⁶¹ Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Services*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corporation*, 477 U.S. at 322-23).

⁶² ECF Doc. No. 1-1 at 15.

⁶³ ECF Doc. No. 32.

⁶⁴ *E.g.*, ECF Doc. Nos. 27, 32.

⁶⁵ *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); *see* Fed. R. Civ. P. 56(e).

⁶⁶ *Trustees of the National Elevator Indus. Pension, Health Benefit, Educ., Elevator Indus. Work Pres. Funds, Elevator Constructors Annuity & 401 Ret. Plan v. Gateway Elevator, Inc.*, No. 09-4206, 2011 U.S. Dist. LEXIS 65719, at *7-8 (E.D. Pa. Jun. 21, 2011).

⁶⁷ *Anchorage Assocs.*, 922 F.2d at 175.

⁶⁸ *Id.*

⁶⁹ *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[70] *Id.*

[71] *Id.* at 581.

[72] *Haney v. West Chester Univ.*, No. 18-2456, 2018 WL 3917975, at *8 (E.D. Pa. Aug. 16, 2018) ("Indeed, no court has held that a non-student has a constitutionally protected interest in a college education.").

[73] U.S. Const. amend. XIV, § 1.

[74] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

[75] *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 402 (M.D. Pa. 2013) (Deprivation of a protected property interest is the first of five elements to state a procedural due process claim under section 1983: (1) deprivation protected liberty or property interest; (2) the deprivation lacked due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant acted under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process).

[76] *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[77] *Borrell*, 955 F. Supp. at 402 (citing *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *8 (E.D. Pa. Dec. 30, 2004) ("Under Pennsylvania law, it has been held that a graduate student has a property interest protected by procedural due process in the continuation of her course of study.")).

[78] 24 P.S. § 20-2001-A(15) (West 2015).

[79] *Haney v. West Chester Univ.*, No. 18-2456, 2018 WL 3917975, at *1 (E.D. Pa. Aug. 16, 2018).

[80] *Id.* at *8.

[81] *Id.* at *9.

[82] *Borrell*, 955 F. Supp. at 397.

[83] *Id.* at 404.

[84] ECF Doc. No. 34-4 at 1, ¶ 3.

[85] ECF Doc. No. 34-7 at 18-20.

[86] *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989).

[87] *Haney v. West Chester Univ.*, No. 18-2456, 2018 WL 3917975, at *7 (E.D. Pa. Aug. 16, 2018) (citing *Mathews*, 424 U.S. at 335).

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.* at *7-8.

[92] *Id.* at *1.

[93] *Id.* at *7.

[94] *Id.* at *7-8.

[95] *Id.* at *7.

[96] *Id.* at *10.

[97] *Id.* (citing *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989)).

[98] *Id.* at *8.

[99] *Palmer v. Merluzzi*, 868 F.2d 90, 93 (3d Cir. 1989).

[100] *Id.* at 93-94.

[101] *Id.* at 96.

[102] *Leacock v. Temple Univ. Sch. of Med.*, No. 97-7850, 1998 WL 1119866, at *6 n.2 (E.D. Pa. Nov. 25, 1998) (citing *Stoller v. Coll. of Med.*, 562 F. Supp. 403 (M.D. Pa. 1983), *aff'd* 727 F.2d 1101 (3d Cir. 1984) (holding a medical school student dismissed for academic reason had a property interest in continuing his studies); *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147 (M.D. Pa. 1978).

[103] *Leacock*, No. 97-7850, at *7.

[104] *Brian A. ex rel. Arthur A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 506 (M.D. Pa. 2001).

[105] *Id.* at 508.

[106] *Id.*

[107] ECF Doc. No. 34-6 at 1-2, 12-13, 16-17, 21-22; ECF Doc. No. 34-7 at 1-2.

[108] ECF Doc. No. 34-7 at 11.

[109] *Id.* at 11-12.

[110] ECF Doc. No. 34 at 10.

[111] *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 162 (3d Cir. 2017) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[112] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 244 (2009)).

[113] *Id.* (citing *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)).

[114] *Id.*

[115] *Davenport v. Borough of Homestead*, 870 F.3d 273, 279-82 (3d Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 314 (2015)).

[116] *Borrell*, 870 F.3d at 162 (citing *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016)).

[117] *Id.*

[118] *Id.* at 157.

[119] *Id.*

[120] *Id.* at 158.

[121] *Id.*

[122] *Id.*

[123] *Id.* at 159.

[124] *Id.*

[125] *Id.*

[126] *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 458 (M.D. Pa. 2014).

[127] *Borrell*, 870 F.3d at 157.

[128] *Id.* at 162.

[129] *Id.* (citing examples *Stoller v. Coll. of Med.*, 562 F. Supp. 403, 412 (M.D. Pa. 1983), *aff'd* 727 F.2d 1101 (3d Cir. 1984); *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *8 (E.D. Pa. Dec. 30, 2004); *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978); *Coulter v. East Stroudsburg University*, No. 10-877, 2010 WL 1816632, at *2 (M.D. Pa. May, 5, 2010)).

[130] *Borrell,* 870 F.3d at 162.

[131] *See Brian A. ex rel. Arthur A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 508 (M.D. Pa. 2001).

[132] *See Haney v. West Chester Univ.*, No. 18-2456, 2018 WL 3917975, at *8 (E.D. Pa. Aug. 16, 2018).

[133] *See Palmer v. Merluzzi*, 868 F.2d 90, 93 (3d Cir. 1989).

[134] *Haney*, No. 18-2456, at *8.

[135] *Williams v. Pennridge School District*, 782 F. App'x 120, 127 (3d Cir. 2019) (citing *Alexander v. Sandoval*, 532 U.S. 275, 283 (2001)).

[136] *Id.* (citing *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005); *Blunt v. Lower Merion School District*, 767 F.3d 247, 273 (3d Cir. 2014) (internal citations omitted)).

[137] *Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993).

[138] *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

[139] *Williams v. Pennridge School District*, 782 F. App'x 120, 128 (3d Cir. 2019).

[140] *Id.* at 122-23.

[141] *Id.* at 123.

[142] *Id.* at 124.

[143] *Id.* at 127.

[144] *Id.* (citing *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 116 (3d Cir. 2013); *Cmty. Servs. Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 182 (3d Cir. 2005); *Commonwealth of Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993); *Kromnick v. Sch. Dist. of Phila.*, 739 F.2d 894, 911 (3d Cir. 1984)).

[145] *Williams*, 782 F. App'x at 127.

[146] ECF Doc. No. 2 at 43, ¶ 15.

[147] *Id.* at 43, ¶ 13.

[148] *Williams*, 782 F. App'x at 127.

[149] ECF Doc. No. 34-2 at 3, ¶ 18.

[150] *Acosta, Inc. v. Navitsky*, No. 17-3282, 2018 U.S. Dist. LEXIS 39451, at *9-10 (E.D. Pa. Mar. 12, 2018) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176-79 (3d Cir. 2017)).

[151] *Id.* at *10.

[152] *Id.* at *9-10 (citing *Merrill Lynch, Pierce, Fenner & Smith v. Napolitano*, 85 F. Supp. 2d 491, 496 (E.D. Pa. 2000)).

[153] *Id.*

[154] *Id.* at *2.

[155] *Id.* at *1-2.

[156] *Id.* at *21.

[157] *Id.* at *15-21.

[158] *Id.* at *12.

[159] *Id.* at *10-12.